IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTT ROLLIE PETTIT,<br><br>        Plaintiff,<br><br>v.<br><br>EDWARD KELLY, in his individual capacity; ZOE SMITH, in her individual capacity; GARY HILL, in his individual capacity; and JANE AND JOHN DOES 2-10, in their individual capacities,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISMISS**<br><br><br>Case No. 2:25-cv-00433-JNP-JCB<br><br>Chief District Judge Jill N. Parrish |

On June 3, 2025, Plaintiff Scott Rollie Pettit filed his First Amended Complaint against Defendants Edward Kelly, Zoe Smith, and Gary Hill. ECF No. 5. On August 11, 2025, Defendants Hill and Smith filed a motion to dismiss. ECF No. 14. That same day, Defendant Kelly also filed a motion to dismiss. ECF No. 15. For the following reasons, the court denies the motions to dismiss.

**BACKGROUND[1]**

In March 2021, Pettit, an inmate with the Utah Department of Corrections, was moved to the Utah State Hospital after attempting to commit suicide. ECF No. 5 ¶¶ 8–11. The Utah State Hospital is a facility designed to address the mental health issues of prisoners and houses both

---

[1] The court recites the facts as alleged in Pettit's First Amended Complaint. *See* ECF No. 5.

male and female patients. *Id.* ¶¶ 12–14. While male and female patients interact in common spaces, each group has a separate hallway in which the other is not allowed. *Id.* ¶¶ 15–16.

While Pettit was in the Hospital, a woman named Jayde Lauren Altemeier was also being treated. *Id.* ¶ 17. Altemeier was considered a violent inmate. She was in custody for attempting to murder her mother (by stabbing her repeatedly), had an extensive criminal record, and had a history of assaulting other prisoners and guards (leading to the State of Utah charging her with assault by a prisoner multiple times and with disarming an officer). *Id.* ¶¶ 18–20. Altemeier's violent behavior carried over to her time at the Hospital, where she assaulted other inmates and was violent with staff. *Id.* ¶ 22.

The First Amended Complaint alleges that Defendants Kelly, Hill, and Smith were all aware of Altemeier's propensity for violence, her criminal record, her record of assaulting other prisoners, and her record of assaulting other patients and staff at the Hospital. *Id.* ¶¶ 46–57. Defendant Kelly is a Forensic Psychiatrist at the Utah State Hospital. *Id.* ¶ 2. Defendant Hill is a Senior Psychiatric Technician at the Utah State Hospital. *Id.* ¶ 4. Defendant Smith was a Security and Enforcement Officer at the Utah State Hospital. *Id.* ¶ 3.

Given Altemeier's violent behavior while at the Hospital, Defendant Kelly ordered her to be housed in the male hallway, in the room next to Pettit's. *Id.* ¶¶ 23–24. Pettit alleges that "Altemeier regularly, repeatedly, and publicly demonstrated her infatuation" with him, of which Defendants were aware. *Id.* ¶¶ 25–26.

On the night of June 11, 2021, Defendant Smith was responsible for ensuring that Altemeier remained in her room. *Id.* ¶ 27. However, at some point in the night, Altemeier entered Pettit's room and sexually assaulted Pettit. *See id.* ¶¶ 28–35. During the assault, Pettit could feel a sharp object in Altemeier's pocket, which "felt to Pettit like a shank of some sort." *Id.* ¶ 34. Pettit

repeatedly yelled "no" during the assault, and eventually Defendants Hill and Smith arrived. *Id.* ¶¶ 35–36.

According to the First Amended Complaint, Defendants Hill and Smith initially told Pettit that it was his fault and that he should have been able to deal with the situation because he is a man and Altemeier is a woman, with Hill telling Pettit that he should "be a man." *Id.* ¶¶ 37–39. Later, the police were eventually called, a four-inch drill bit was discovered in Altemeier's room, and Altemeier was charged with forcible sexual abuse. *Id.* ¶¶ 40–41. In spite of these events, Defendant Kelly continued to house Altemeier in the male hallway, but he ordered that Pettit be moved one room down. *Id.* ¶¶ 42–45.

Pettit filed his original complaint on May 30, 2025, and he filed his First Amended Complaint on June 3, 2025. ECF Nos. 2, 5. He alleges violations of the Eighth and Fourteenth Amendments. ECF No. 5 ¶¶ 58–130. Defendants have moved to dismiss the complaint based on qualified immunity. ECF Nos. 14, 15.

## LEGAL STANDARD

Defendants argue that Pettit's complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

"On a motion to dismiss based on qualified immunity, the ultimate question is 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct.'" *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (citing *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). The burden is on the plaintiff. *Burke v. Pitts*, 157 F.4th 1326, 1337 (10th Cir. 2025). Nevertheless, at this stage, Defendants face "a more challenging standard of review than would apply on a summary judgment." *Fuqua*, 157 F.th at 1301 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). At the motion to dismiss stage, it is the defendant's *alleged* conduct that is scrutinized for objective legal reasonableness. *See Thomas*, 765 F.3d at 1194.

## ANALYSIS

The qualified immunity analysis has two prongs. "The first qualified immunity prong asks whether the facts the plaintiff has shown make out a violation of a constitutional right." *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1227 (10th Cir. 2025) (citing *Pearson v. Callahan*, 555 U.S. 223, 239 (2009)). "[C]ollective and generalized allegations" that do not identify specific actions taken by particular defendants are "insufficient to overcome an assertion of qualified immunity at the motion-to-dismiss stage." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)).

Courts need not address this first prong, however, if the plaintiff has failed to allege facts satisfying the second prong, which "asks whether the law in question was clearly established at the time of the defendant's conduct." *Ellis*, 147 F.4th at 1228 (citing *Pearson*, 555 U.S. at 232); *see also Pearson*, 555 U.S. at 242. "For law to be 'clearly established,' there need not be 'a case directly on point, but existing precedent must have placed the statutory or constitutional question

beyond debate.'" *Ellis*, 147 F.4ᵗʰ at 1228 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (citation modified). "To make this determination, we consider either if courts have previously ruled that *materially similar conduct* was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with *obvious clarity* to the specific conduct at issue." *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964–65 (10th Cir. 2016) (brackets and internal quotation marks omitted). "At bottom, there must be some 'substantial correspondence between *the conduct in question* and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" *Ellis*, 147 F.4ᵗʰ at 1229 (quoting *Rodriguez*, 824 F.3d at 965 (emphasis added) (quotation omitted)).

Utilizing this procedure, the court first addresses Pettit's Eighth Amendment claims before continuing on to Pettit's Fourteenth Amendment claims.

## I.    EIGHTH AMENDMENT CLAIMS

According to Pettit, the Eight Amendment, as applied to the states through the Fourteenth Amendment, imposes a duty upon state officials to take reasonable measures to guarantee the safety of inmates, including protecting inmates from the violence of other inmates. ECF No. ¶¶ 59–60. Pettit alleges that Defendants Kelly and Smith knew that Altemeier posed a substantial and serious risk to Pettit but nevertheless disregarded the risk, respectively, by placing Altemeier in the room next to Pettit and by failing to monitor her appropriately. The court first addresses Pettit's claim against Smith and then addresses his claim against Kelly.

### A.    Defendant Smith

Pettit alleges that while Defendant Smith, the security officer, knew that Altemeier posed

a substantial and serious risk to Pettit, Smith disregarded that risk and failed to monitor Altemeier appropriately under the circumstances. *Id.* ¶¶ 82–87.

The court first examines whether Pettit has made out a claim of a constitutional violation— here, an Eighth Amendment deliberate indifference or failure to protect claim. In her motion to dismiss, Smith argues (1) that the alleged conduct does not implicate the Eighth Amendment because Pettit was not incarcerated at the time of the events; and (2) that the First Amended Complaint fails to show Smith was "deliberately indifferent" toward Pettit. ECF No. 14 at 10.

Smith's first argument is based on the Supreme Court's ruling in *Farmer v. Brennan*, which held that for a failure to prevent harm claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Smith latches on to the Court's use of "incarcerated," arguing that "[c]onvicts receiving treatment at a state mental hospital are not incarcerated"[2] and thus do not fall under the Eighth Amendment's protections. ECF No. 14 at 11. The court rejects this argument. In *Farmer*, the Court considered the Eighth Amendment claim of a petitioner incarcerated in the federal prison system,

---

[2] To support the proposition that "[c]onvicts receiving treatment at a state mental hospital are not incarcerated," Smith cites to *Vitek v. Jones*, 445 U.S. 480, 493 (1980) and *State v. Herrera*, 1999 UT 64, ¶ 41, 993 P.2d 854. ECF No. 14 at 11. While the truth of that proposition is not materially relevant, since the court finds the Eighth Amendment applies to Pettit's claims because he was convicted, the court notes that neither cited case supports such a proposition. In *Vitek v. Jones*, the Supreme Court simply noted, as relevant here, that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Vitek*, 445 U.S. at 493. The Court distinguished the "qualitatively different" consequences arising from a prisoner subject to involuntary psychiatric treatment as "affording him additional due process protections." *Id.* at 493–94. In other words, the Court was making a point about the *additional* protections needed for a qualitatively different type of deprivation, rather than delineating the boundaries of "incarceration" in order to cabin the reach of the Eighth Amendment. In addition, as Pettit points out, the relevant portion of *State v. Herrera* revolved around a standing issue, rather than a distinction between confinement in a mental hospital and a prison. *See Herrera*, 1999 UT 64, ¶ 41.

and the language of its holding simply reflected those facts. *See Farmer*, 511 U.S. at 830, 834. The Supreme Court has made clear the Eighth Amendment attaches once an individual is convicted. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199 n.6 (1989) ("The Eighth Amendment applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'"). Here, Pettit is an inmate—not just a patient in the Hospital—and his Eighth Amendment rights have attached. He therefore may pursue a failure to prevent harm claim as another prisoner could. *See, e.g.*, *Parnisi v. Colorado State Hosp.*, 992 F.2d 1223, at *1–2 (10th Cir. 1993) (unpublished) (noting that a prisoner-patient's Eighth Amendment claim against three state hospital physicians was not frivolous).

Smith next argues that even if the Eighth Amendment were applicable, the First Amended Complaint fails to show that she acted with "deliberate indifference." ECF No. 14 at 12. Two requirements must be met for a deliberate indifference claim to succeed as a violation of the Eighth Amendment. "[A] prison official violates the Eighth Amendment only (1) if the constitutional deprivation is 'objectively sufficiently serious' and (2) the prison official has a 'sufficiently culpable state of mind.'" *Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Specifically, Smith argues that Pettit has failed to allege facts in his complaint sufficient to satisfy either the objective or subjective requirements of the Eighth Amendment deliberate indifference analysis. ECF No. 14 at 13.

"To satisfy the objective component, the plaintiff must show the defendant's 'alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Ullery*, 949 F.3d at 1290 (quoting *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003)). "In cases involving

a failure to prevent harm, this means that the prisoner must show that the conditions of his incarceration present an objective 'substantial risk of serious harm.'" *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008).

"To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Castillo v. Day*, 790 F.3d 1013, 1021 (10th Cir. 2015) (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)). In other words, Pettit must allege that Smith was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) that [she] actually drew that inference; and (3) that [she] was "aware of and fail[ed] to take reasonable steps to alleviate that risk." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018). "This knowledge may be proved 'in the usual ways, including inference from circumstantial evidence, and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Howard*, 534 F.3d at 1236.

With respect to the objective risk requirement, Smith argues that the surrounding circumstances must show that Pettit personally faced an objective substantial risk of harm, not just that he in fact did experience serious harm. ECF No. 14 at 13. Smith argues this standard is a high one, requiring Pettit to show that it was "sure or very likely" that he would experience harm. *Id.*

As part of this argument, Smith contends sexual assaults are categorically different from physical assaults and argues that because Altemeier had no known history of *sexually* assaulting anyone, and because the complaint only alludes to Altemeier's infatuation with Pettit rather than specific types of demonstrations, the surrounding circumstances lack any objective indicia that Altemeier would sexually assault Pettit. ECF No. 14 at 15. She also argues that Pettit was not among Altemeier's previous type of typical victims, which according to Smith included "her

8

mother, prisoners, prison guards, a police officer, hospital staff, and other 'inmates' at the hospital." *Id.* Despite this concession by Smith that Altemeier had previously attacked other inmates in the Hospital (which would ostensibly be a group in which Pettit can claim membership), Smith further contends that the complaint is deficient because it did not allege Altemeier had a history of attacking *male* prisoners or patients. *Id.*

Unpersuaded by these arguments, the court finds that Pettit has, at this stage, successfully alleged that "the conditions of his incarceration present[ed] an objective 'substantial risk of serious harm.'" *Howard*, 534 F.3d at 1236. Pettit asserts in his First Amended Complaint that Altemeier had a long history of extremely violent behavior—behavior that carried over to her time in the Utah State Hospital. There, she both assaulted other inmates and was violent with staff members. While Altemeier was initially, as policy dictates, housed in the female hallway, there is no indication that her violence was targeted only at other women in the facility, as Smith suggests. For example, there is no reason to believe at this point that the staff members affected by the violence were only women. With Altemeier moved to a room directly adjoining Pettit's, requiring supervision as alleged, and "regularly, repeatedly, and publicly demonstrat[ing] her infatuation," with Pettit, there did appear to be an objective substantial risk of serious harm. *See* ECF No. 5 ¶ 25.

In addition, while Smith argues that physical assaults and sexual assaults are "categorically different," they are both unquestionably "kind[s] of aggression." *United States v. Armajo*, 38 F.4th 80, 83 (10th Cir. 2022) (discussing the difference between the two in the context of Federal Rules of Evidence 403 and 404(b)). The question the court asks here is if there was, as alleged, objective indicia of "serious harm." Altemeier's history of violence, along with her infatuation with Pettit,

provides such objective indicia.[3] *See Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (characterizing the holding of *Howard v. Waide*, which dealt with sexual assault, as an "Eighth Amendment right to be protected from substantial risks of *assault*" (emphasis added)); *Tafoya v. Salazar*, 516 F.3d 912, 921 (10th Cir. 2008) (considering a Sheriff's hiring of employees with criminal histories including *assault* as relevant to a deliberate indifference claim in which those employees committed *sexual assault*); *id.* at 916 ("The official's knowledge of the risk need not be knowledge . . . of the particular manner in which injury might occur." (citing *Farmer*, 511 U.S. at 843)); *Farmer*, 511 U.S. at 843 (stating the relevant question is if the deliberate indifference exposed a prisoner to a risk of "serious damage to his future health" and that "it does not matter whether the risk comes from a single source or multiple sources"); *Poore v. Glanz*, 724 F. App'x 635, 641–42 (10th Cir. 2018) (unpublished) (rejecting an argument that "a prior incident must be identical rather than merely similar to the misconduct at issue to demonstrate a sufficiently serious risk"). In any case, the complaint effectively alleges a sexual assault *as well as an assault*, as Pettit

---

[3] Defendants argue that the Tenth Circuit has articulated a requirement that in a case like this, the prison official must be aware of at least one prior sexual assault to satisfy the subjective component. *See* ECF No. 15 at 15–19. And Smith argues this is relevant to the objective component as well. *See* ECF No. 23 at 4–5. In support, Defendants cite to *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998); *Keith v. Koerner*, 843 F.3d 833, 849 (10th Cir. 2016); *Poore v. Glanz*, 724 F. App'x 635, 642 (10th Cir. 2018) (unpublished); and *Perry v. Durborow*, 892 F.3d 1116, 1127 (10th Cir. 2018). The court declines to read these cases as establishing a bright-line rule that a prior instance of sexual assault is required for a deliberate indifference claim relating to sexual assault. Each of these cited cases either was speaking to a different issue (e.g., *Perry* speaking to the second prong of qualified immunity) or cabined their holdings to the factual context underlying the claims, with evidence of prior sexual assaults being considered either as relevant in the determination or needed given a lack of other indicia of risk. Here, the factual context of a violent inmate being infatuated with Plaintiff and needing supervision provides the objective indicia needed at this stage. And, even Defendants' cited case law does not support such a bright-line rule. *See Poore*, 724 F. App'x at 641–42 (unpublished) (rejecting an argument that "a prior incident must be identical rather than merely similar to the misconduct at issue to demonstrate a sufficiently serious risk").

argues. *See* Utah Code § 76-5-103 (outlining the elements of aggravated assault). It appears, based on the complaint, that Altemeier entered Pettit's cell with a sharp object, which Pettit felt as she assailed him. Pettit has thus satisfied the objective component.

Pettit has similarly satisfied the subjective component. The First Amended Complaint alleges that Smith was aware of the relevant facts in this case (Altemeier's history of violence, her public infatuation with Pettit, and her move to the male hallway in violation of policy), that Smith therefore knew Altemeier posed a serious risk to Pettit, and that Smith failed to take reasonable steps to alleviate that risk (here, by failing to keep watch over Altemeier as ordered). *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (outlining the requirements). The facts as outlined in the complaint make Pettit's assertion of Smith's subjective knowledge "plausible" rather than conclusory. *See Shauf v. Rios*, 313 F. Supp. 3d 1262, 1269 (W.D. Okla. 2018) (noting that "at the motion-to-dismiss stage before discovery, an injured prisoner is in a difficult position to allege facts to support officials' deliberately indifferent state of mind and the affirmative link that caused harm").

Finding that Pettit has sufficiently alleged an Eighth Amendment violation, by satisfying both the objective and subjective components of the deliberate indifference analysis, the court now shifts to the second prong of the qualified immunity analysis—"whether the law in question was clearly established at the time of the defendant's conduct."[4] *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1228 (10th Cir. 2025). Smith argues that Pettit cannot prove Smith violated clearly

---

[4] Pettit argues that Kelly and Smith have not addressed the qualified immunity question sufficiently. ECF No. 17 at 22–23. He asks the court to thus reserve the issue until after discovery is complete. *Id.* at 23. The court denies this request. In the court's view, Defendants at this stage have adequately briefed their argument.

established law because "there is no case showing a hospital officer violates the Eighth Amendment by failing to protect a patient from being sexually assaulted by another patient when the assailant has no history of sexual assault, the assailant did not interact with the victim in a manner indicating she would assault him, the assailant only had a propensity to commit physical assaults, and the victim was not someone who the assailant would typically assault." ECF No. 14 at 21.

The court declines to characterize the particulars of this case in that way. To be sure, the court must consider "whether the violative nature of *particular* conduct is clearly established." *Ellis*, 147 F.4th at 1229 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). At the same time, "a case directly on point" is not required. *Mullenix*, 577 U.S. at 12. The Tenth Circuit has clarified that the concern underlying the particularized requirement applies with more force to Fourth Amendment cases. *See A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1199 (10th Cir. 2019). Here, in the Eighth Amendment context in which officers and officials often retain significantly more control over the circumstances of inmates than do officers dealing with Fourth Amendment situations, general rules are more likely to be "sufficiently specific to have put Defendants on notice." *See id.* (discussing the same with respect to equal protection); *see, e.g.*, *Wilson*, 877 F.3d at 1209 (accepting, with respect to the clearly established law analysis, a concession that "prison inmates have a clearly established Eighth Amendment right to be protected from substantial risks of assault" post-*Mullenix*); *Poore*, 724 F. App'x at 642 (unpublished) (in an Eighth Amendment case, rejecting "the argument that defendants are entitled to qualified immunity because this court has not previously held that the precise combination of policies implemented by [Defendant] constituted deliberate indifference").

12

Thus, taking Pettit's allegations as true, the relevant question is whether it was clearly established that it is an Eighth Amendment violation for an officer to knowingly fail to take reasonable steps to prevent an inmate,[5] who poses a known substantial risk of serious harm, from harming other inmates. The court finds this to be clearly established.

As a descriptive, though unpublished, example, the court first looks to *Hostetler v. Green*, 323 F. App'x 653 (10th Cir. 2009) (unpublished). In that case, Ms. Hostetler, a pretrial detainee, was in her cell when a jailer, Mr. Green, came by to drop off dinner, helped by an inmate, Mr. Drewery. *Id.* at 655. When Green and Drewery came back to collect the dinner trays, Drewery walked into Hostetler's cell and refused to come out. *Id.* Green, seeking to finish his rounds, closed the cell door with Drewery still inside and did not return for ten minutes, despite being aware of a policy preventing male inmates having access to cells in which female inmates were held. *Id.* In those ten minutes, Drewery proceeded to rape Hostetler. *Id.* The Tenth Circuit held that "we readily conclude that it was clearly established by 2004, when the alleged infraction took place, that an inmate has an Eighth Amendment right to be protected against prison guards taking actions that are deliberately indifferent to the substantial risk of sexual assault by fellow prisoners." *Id.* at 659

---

[5] Or, as here, an inmate-patient. Defendants argue that the fact that Pettit and Altemeier were in the Utah State Hospital distinguishes this case from any other case that takes place in a prison facility. *See, e.g.*, ECF No. 15 at 24. The court disagrees. Like in many prisons, the Hospital had certain policies in place designed to keep certain inmates apart from others at certain times of the day. Like in prisons, the Hospital was dealing with, and regularly deals with, inmates, some of whom are violent and need monitoring and supervision. Furthermore, prisons themselves vary in policies, procedures, and infrastructure, and many often include clinics and medical units. The Tenth Circuit has accordingly considered precedent grounded in non-medical, penal contexts when conducting clearly established law inquiries for cases involving medical units. *See, e.g.*, *Poore v. Glanz*, 724 F. App'x 635, 642–43 (10th Cir. 2018) (unpublished); *Henderson v. Glanz*, 813 F.3d 938, 953 (10th Cir. 2015) (finding qualified immunity applies but citing *Hovater v. Robinson*, 1 F.3d 1063 (10th Cir. 1993), and *Farmer v. Brennan*, 511 U.S. 825, 847 (1994), with respect to a more general right).

(citing *Farmer*, 511 U.S. at 833–34, and *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980)). Here, Smith clearly engaged in "materially similar" conduct. Smith (1) failed to watch Altemeier as she was assigned to do; (2) knew Altemeier posed a risk to other patient-inmates and knew of Altemeier's public infatuation with Pettit; and (3) was similarly aware of a policy normally preventing Altemeier from being housed near Pettit.

Admittedly, as an unpublished case, *Hostetler* is persuasive but not sufficient to prove clearly established law. But other published binding opinions together show that conduct materially similar to Smith's (and to Green's in *Hostetler*)—i.e., an officer knowingly failing to prevent an inmate from being harmed by another inmate who presents a known substantial risk— is clearly established as violative of the Eighth Amendment. *See Howard*, 534 F.3d at 1240–41 (in which gang members were able to assault plaintiff because officials failed to move him despite known risk); *Wilson*, 877 F.3d at 1209 (citing *Howard* for the proposition that "prison inmates have a clearly established Eighth Amendment right to be protected from substantial risks of assault"); *Castillo*, 790 F.3d at 1020 ("More than three decades ago, this court held that the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other inmates."); *Farmer*, 511 U.S. at 833, 848–49 (in which a prisoner was assaulted after being placed in general population despite signs of officers' subjective knowledge of risk); *Ramos v. Lamm*, 639 F.2d 559, 573–74 (10th Cir. 1980) (in which a lack of supervision and surveillance contributed to known widespread violence affecting prisoners).

In making this determination, the court acknowledges that the Tenth Circuit's precedent on when a right is clearly established can be read to be conflicting at times. For example, in *Henderson v. Glanz*, the Tenth Circuit reversed a district court's denial of qualified immunity. *Henderson*, 813 F.3d at 953. In that case, the district court concluded that it was clearly established

14

that "inmates have a right to be free from assaults resulting from a jail official's failure to ensure sufficient staffing and/or supervision of inmates." *Id.* The Tenth Circuit, while agreeing with the general proposition, nevertheless held that more was required to show a violation of a clearly established constitutional right. Fatally in that case, the plaintiff "ha[d] provided no authority clearly establishing that an officer violates the Eighth Amendment when that officer, as here with [the defendant], ha[d] no subjective knowledge of risk of assault to an inmate, [left] to attend to a medical emergency, and [did] so believing the inmate is in a locked room under the guard of another officer." *Id.*

Ultimately, the boundary between particularized and generalized has shifted over time, and where it now resides is not entirely clear. Nevertheless, the court finds its analysis to be in line with even *Henderson*'s clearly established analysis methodology—which requires particularization to the context of the case rather than broad general propositions. In *Henderson*, the Tenth Circuit considered, when framing the relevant clearly established law, if the officer had subjective knowledge of the risk of harm and subjective knowledge of his failure to take reasonable measures to address it. Here too the court focuses on finding materially similar conduct: situations in which there was subjective knowledge of the risk of harm and subjective knowledge of the failure to take reasonable steps. These particularized facts make the court's framing of clearly established law granularized rather than generalized. The court thus declines to dismiss Pettit's Eighth Amendment claim against Smith.

### B.    Defendant Kelly

In his complaint, Pettit also alleges an Eighth Amendment claim against Defendant Kelly. He alleges that while Kelly knew that Altemeier posed a substantial and serious risk to Pettit, Kelly

disregarded that risk by placing her in the room next to Pettit and failing to segregate Altemeier. ECF No. 5 ¶¶ 68–71.

Defendant Kelly first argues that Pettit's claim fails at the first prong of qualified immunity—whether the facts the plaintiff has alleged make out a violation of a constitutional right. ECF No. 15 at 14. The court again looks to the objective and subjective components of an Eighth Amendment deliberate indifference claim. Here, the objective component analysis remains the same: Pettit alleges Kelly was aware of the same objective indicia of risk of serious harm that Smith was. *See* ECF No. 5 ¶¶ 62–73.

Much of the analysis is also the same for the subjective component: Pettit alleges that Kelly was aware of facts from which the inference could be drawn that Altemeier posed a substantial risk of serious harm and that Kelly knew of that risk. *See id*; *Perry*, 892 F.3d at 1122. Pettit also alleges that Kelly was aware of and failed to take reasonable steps to alleviate the risk.

Kelly in response argues that he took reasonable measures to abate any potential harm, including by having Smith tasked with ensuring Altemeier stayed in her room. ECF No. 15 at 21. The question of whether the measures Kelly took were reasonable or not, however, is better resolved at a later stage. At the motion to dismiss stage, Pettit has alleged facts sufficient to plausibly state an Eighth Amendment claim.

Finally, the analysis with respect to there being clearly established law also remains the same. The court finds it clearly established that it is an Eighth Amendment violation for an officer to knowingly fail to take reasonable steps to prevent an inmate, who poses a known substantial risk of serious harm, from harming other inmates. The court thus declines to dismiss the Eighth Amendment claim against Defendant Kelly.

16

## II.    FOURTEENTH AMENDMENT CLAIMS

Pettit also alleges that Kelly, Smith, and Hill violated the Fourteenth Amendment by discriminating against him based on his gender. The complaint alleges that Kelly, Smith, and Hill "relied on gender stereotypes" (1) in determining where to house Altemeier (ECF No. 5 ¶ 94); (2) in deciding not to monitor Altemeier at all times (*id.* ¶ 107); and in initially blaming Pettit for the assault (*id.* ¶¶ 111–112, 121). In his response brief, Pettit characterizes these claims as gender-based failures to protect and to provide resources post-assault. ECF No. 17 at 28.

"To prove an equal-protection claim based on disparate treatment, a plaintiff must provide either direct evidence of discrimination or prevail under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (unpublished) (in the employment discrimination context). At oral argument, Plaintiff's counsel argued that Plaintiff's claims were based on direct evidence of discrimination.

Here, Pettit has plausibly alleged direct evidence of discrimination with respect to Smith and Hill. "Direct evidence includes evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude." *Shaffer v. Potter*, 499 F.3d 900, 904 (8th Cir. 2007); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (Direct evidence may include "[c]omments in the workplace that reflect personal bias" if the speaker "had decisionmaking authority and acted on his or her discriminatory beliefs.").

Pettit alleged that Smith and Hill made gendered comments[6] to him that support the proposition that bias influenced their decisions, and the court does not need any "inference or presumption" to link those comments to the alleged violative acts. *See McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024).

The same cannot be said about Defendant Kelly. Pettit provides no potential direct evidence of discrimination with respect to Kelly. Looking then to the *McDonnell Douglas* framework as a guide, a plaintiff must first prove a prima facie case of discrimination. *Morman*, 632 F. App'x at 933 (unpublished). But at the motion to dismiss stage, Pettit need not "establish a prima facie case in [his] complaint." *Id.* at 932 (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). Rather, "the elements of each alleged cause of action help to determine whether [he] has set forth a plausible claim." *Id.* (quoting *Khalik*, 671 F.3d at 1192).

The elements of a prima facie case of intentional discrimination under the Equal Protection Clause vary based on "the context and nature of the facts." *Morman*, 632 F. App'x at 934 (unpublished). Nevertheless, "'[t]o assert a viable equal protection claim,'" Pettit "'must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him].' Upon this showing, [he] must then demonstrate that the state actor's differential treatment of [him] cannot pass the appropriate standard of scrutiny." *Dalton v. Reynolds*, 2 F.4th 1300, 1308 (10th Cir. 2021) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)); *see A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019); *Morman*, 632 F. App'x at 934

---

[6] Specifically, the complaint alleges that Smith and Hill told Pettit he should act like or "be a man." ECF No. 5 ¶¶ 37–39. A statement like this alone, however, is insufficient to establish a constitutional violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse [by law enforcement] . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.").

(unpublished) ("Under any standard, to prevail on an equal-protection claim, she would need to show that she was treated differently than similarly situated employees . . . .").

This initial threshold showing—that similarly situated others were treated differently—has been met with respect to the claim against Kelly. This is because the First Amended Complaint sufficiently alleges that any similarly situated individuals—here, patient inmates who were female—were treated differently than Pettit. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312–13 (10th Cir. 1998). The fact that Kelly allegedly moved Altemeier to the male hallway in violation of policy, in combination with Pettit's allegation that this was because Kelly believed Pettit as a man should be able to defend himself, is enough to support the inference that similarly situated individuals were treated differently.

However, the court also notes that other allegations in the complaint are too conclusory to support the claim. For example, Pettit alleges:

- "*If* a male patient had sexually assaulted a female patient at Utah State Hospital, Defendant Kelly *would not have* allowed the male patient to remain in the same hallway as the female patient." ECF No. 5 ¶ 98 (emphasis added).

- "*If* a male patient had sexually assaulted a female patient, Dr. Kelly *would not have* moved the female patient." *Id.* ¶ 99 (emphasis added).

Each of these allegations are conclusory, relying on hypothetical comparators, and are thus not sufficient to support a plausible claim. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1282 (10th Cir. 2021) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."); *id.* (Courts "disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim."). Nevertheless, the complaint as a whole states a plausible claim against Kelly.

Having determined that Pettit has made out a plausible equal protection claim against Kelly, Smith, and Hill, the court moves to the second prong of the qualified immunity analysis. The Tenth Circuit has held "that 'general statements of the law are not inherently incapable of giving fair and clear warning to officers' that their conduct violates a constitutional right, and that such statements provide the required notice when 'the unlawfulness' of their conduct is 'apparent' from the pre-existing law. In other words, '[g]eneral statements of the law can clearly establish a right for qualified immunity purposes if they apply with obvious clarity to the specific conduct in question.' And this is so 'even though the very action in question has not previously been held unlawful.'" *A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1198 (10th Cir. 2019).

Following the Tenth Circuit in *A.N.*, the court finds then that "the clearly established rule prohibiting intentional, arbitrary and unequal treatment of similarly situated individuals under the law applies with obvious clarity to Defendants' alleged actions" in this case. *Id.* This rule is "relatively straightforward and not difficult to apply"—it is a violation of the law to have treated Pettit differently than others due to his sex. *Id.*

Here, Defendants' duty to protect and to provide support to Pettit did not turn on his sex. He should have received the same level of protection as female inmates (applicable to Kelly and Smith's alleged actions) and should have received similar treatment post-assault as female inmates (applicable to each Defendant's actions). *See Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1229–30 (10th Cir. 2025) (noting district courts should explain why the general equal protection rule applies under the facts of the case). In short, Defendants "did not need a body of case law" involving sex discrimination claims dealing with protecting inmates from harm to be on notice that their actions with respect to an inmate should not differ because of the sex of the inmate. *Griffith*

20

*v. El Paso Cnty., Colorado*, 129 F.4th 790, 832 (10th Cir. 2025). The court thus declines to dismiss the Fourteenth Amendment claims against Defendants.

## CONCLUSION AND ORDER

For the reasons above, Defendants' motions are DENIED.

Signed March 24, 2026.

BY THE COURT

_____

Jill N. Parrish
United States Chief District Judge